UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. DUMEBI EGBUFOR,<br><br>     Plaintiff,<br><br> vs.<br><br>CAROLYN BOYD, RICK CRISWELL,<br>JONATHAN HOCHWALD, ARTHUR<br>KARPATI, EMURSIVE PRODUCTIONS, LLC,<br>PDNYC, LLC<br><br>     Defendants. | Civil Action No. 1:24-cv-09779-AS |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

### TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT PROCEDURAL BACKGROUND .......................................................... 1

RELEVANT COMPLAINT ALLEGATIONS ............................................................. 1

I.     THE PARTIES ................................................................................................... 2

II.    RELEVANT ALLEGATIONS ........................................................................... 2

       A.   Boyd Asks Plaintiff Where She Lives ...................................................... 3

       B.   Plaintiff's Job Duties Conflict With New Employee Orientation .............. 3

       C.   Plaintiff's Office Relocation .................................................................... 3

       D.   Karpati's Alleged Remark ........................................................................ 3

       E.   Plaintiff Unilaterally Circulates A COVID-19 Survey ............................. 4

       F.   Emursive Investigates Plaintiff's Complaints .......................................... 5

       G.   Plaintiff Refuses To Report To Work And Is Terminated ......................... 6

ARGUMENT ............................................................................................................. 10

I.     APPLICABLE LAW ........................................................................................ 10

II.    PLAINTIFF'S DISCRIMINATION CLAIMS MUST BE DISMISSED ........... 11

       A.   Applicable Standard ............................................................................... 11

       B.   Plaintiff's Race Discrimination Claims Must Be Dismissed ................... 11

       C.   Plaintiff's National Origin Discrimination Claims Must Be Dismissed ... 13

       D.   Plaintiff's Age Discrimination Claims Must Be Dismissed ..................... 14

       E.   Plaintiff's Sex Discrimination Claims Must Be Dismissed ..................... 14

III.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE
       DISMISSED ..................................................................................................... 15

IV.    PLAINTIFF'S RETALIATION CLAIMS MUST BE DISMISSED ................. 17

V.     PLAINTIFF'S FMLA CLAIM MUST BE DISMISSED ................................. 19

VI.    PLAINTIFF'S TITLE VII AND ADEA CLAIMS MUST BE DISMISSED
       AGAINST THE INDIVIDUAL DEFENDANTS ............................................. 20

CONCLUSION ......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Acosta v. Kennedy Children's Ctr.*
    No. 24 CIV. 3358, 2025 WL 70141 (S.D.N.Y. Jan. 10, 2025) ................................................ 15

*Ahmad v. N.Y.C. Health & Hosps. Corp.*
    No. 20 Civ. 675, 2021 WL 1225875 (S.D.N.Y. Mar. 31, 2021) ........................................... 14

*Bakeer v. Nippon Cargo Airlines Co., Ltd.*
    No. 09 CV 3374, 2011 WL 3625103 (E.D.N.Y. July 25, 2011) ........................................... 17

*Blige v. City Univ. of N.Y.*
    No. 115CV08873, 2017 WL 498580 (S.D.N.Y. Jan. 19, 2017) ........................................... 15

*Brennan v. Legal Aid Soc'y*
    No. 19-CV-7756, 2020 WL 6875059 (S.D.N.Y. Nov. 23, 2020) .......................................... 19

*Brown v. The Pension Boards*
    488 F. Supp. 2d 395 (S.D.N.Y. 2007) .................................................................................... 19

*Buon v. Spindler*
    65 F.4th 64 (2d Cir. 2023) ..................................................................................................... 11

*Caputo v. Copiague Union Free Sch. Dist.*
    218 F. Supp. 3d 186 (E.D.N.Y. 2016) .................................................................................... 20

*Cardwell v. Davis Polk & Wardwell LLP*
    2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) ........................................................... 11, 13, 16

*Collier v. Boymelgreen Devs.*
    No. 06 CV 5425, 2007 WL 1452915 (E.D.N.Y. May 17, 2007) .......................................... 19

*Conforti v. Sunbelt Rentals, Inc.*
    201 F. Supp. 3d 278 (E.D.N.Y. 2016) .................................................................................... 20

*DeFranco v. N.Y. Power Auth.*
    731 F. Supp. 3d 479 (W.D.N.Y. 2024) .................................................................................. 17

*Deveaux v. Skechers USA, Inc*
    2020 WL 1812741 (S.D.N.Y. Apr. 9, 2020) .......................................................................... 11

*Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*
    742 F. Supp. 2d 382 (W.D.N.Y. 2010) .................................................................................. 10

*Fouche v. St. Charles Hosp.*
    64 F. Supp. 3d 452 (E.D.N.Y. 2014) ............................................................... 17, 18

*Harris v. Office of N.Y. State Comptroller*
    No. 20-CV-8827, 2022 WL 814289 (S.D.N.Y. Mar. 17, 2022) ............................ 17

*James v. Borough of Manhattan Cmty. Coll.*
    No. 20-cv-10565, 2021 WL 5567848 (S.D.N.Y. Nov. 29, 2021) .......................... 16

*Lewis v. Kaleida Health*
    No. 20-CV-1860, 2022 WL 4485288 ................................................................. 18

*Lopez v. White Plains Hosp.*
    No. 19-CV-6263, 2022 WL 1004188 (S.D.N.Y. Mar. 30, 2022) .......................... 16

*Luzunaris v. Baly Cleaning Servs.*
    No. 23-cv-11137, 2024 WL 3926708 (S.D.N.Y. July 29, 2024) .................... 15, 18

*Maines v. Last Chance Funding, Inc.*
    No. 2:17-cv-05453, 2018 WL 4558408 (E.D.N.Y. Sept. 21, 2018) ...................... 15

*Melendez v. Cablevision Sys. Corp.*
    No. 17-cv-9161, 2018 WL 2727890 (S.D.N.Y. June 6, 2018) ............................. 20

*Mesias v. Cravath, Swaine & Moore LLP*
    106 F. Supp. 3d 431 (S.D.N.Y. 2015) ............................................................... 14

*Mitchell v. Planned Parenthood of Greater N.Y., Inc.*
    745 F. Supp. 3d 68 (S.D.N.Y. 2024) ............................................................ 11, 12

*Mumin v. N.Y.C.*
    No. 1:23-CV-03932, 2024 WL 5146085 (S.D.N.Y. Dec. 17, 2024) .................... 13

*Ndongo v. Bank of China Ltd.*
    No. 22-cv-05896, 2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023) .......................... 16

*Pattanayak v. Mastercard Inc.*
    No. 22-1411, 2023 WL 2358826 (2d Cir. Mar. 6, 2023) ..................................... 14

*Shukla v. Deloitte Consulting LLP*
    No. 1:19-cv-10578, 2020 WL 8512852 (S.D.N.Y. Nov. 17, 2020) ...................... 18

*Smolen v. Fisher*
    No. 12 Civ. 1856, 2012 WL 3609089 (S.D.N.Y. Aug. 23, 2012) ........................ 10

*Soto v. Marist Coll.*
    No. 17-CV-7976, 2019 WL 2371713 (S.D.N.Y. June 5, 2019) ............................ 19

*Starr v. Sony BMG Music Entm't*
   592 F.3d 314 (2d Cir. 2010) ............................................................................... 10

*Sutter v. Dibello*
   No. CV 18-817, 2019 WL 4195303 (E.D.N.Y. Aug. 12, 2019) ............................................ 18

*Thior v. JetBlue Airways, Inc.*
   No. 13-cv-6211, 2016 WL 5092567 (E.D.N.Y. Sept. 19, 2016) ......................................... 18

*Troeger v. JetBlue Airways Corp.*
   No. 23-CV-10859, 2024 WL 5146185 (S.D.N.Y. Dec. 17, 2024) ....................................... 19

*Waldo v. N.Y.C. Health & Hosps. Corp.*
   No. 06CV2614, 2009 WL 2777003 (E.D.N.Y. Aug. 31, 2009) ........................................... 16

## Statutes

29 U.S.C.A. § 2611(2)(A) ................................................................................................. 19

Age Discrimination in Employment Act ................................................................. 2, 11, 15, 17, 20

Title VII, Civil Rights Act of 1964 .......................................................... 1, 2, 11, 15, 17, 18, 20

42 U.S.C. § 1981 ....................................................................................... 1, 11, 18, 20

Family and Medical Leave Act ................................................................................. 2, 19, 20

New York City Human Rights Law ............................................................. 2, 11, 15, 17, 18

New York State Human Rights Law ............................................................. 2, 11, 15, 18

## Other Authorities

F.R.C.P. 12(b)(6) ........................................................................................................ 1, 10

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Defendants Carolyn Boyd ("Boyd"), Rick Criswell ("Criswell"), Jonathan Hochwald ("Hochwald"), Arthur Karpati ("Karpati," together with Boyd, Criswell, and Hochwald, the "Individual Defendants"), Emursive Productions, LLC and PDNYC, LLC (together, "Emursive" and together with the Individual Defendants, "Defendants"), by and through their undersigned counsel, submit this memorandum of law in support of their motion to dismiss the Complaint ("Complaint," or "Compl.") (ECF No. 1-1) of Plaintiff D. Dumebi Egbufor ("Plaintiff") (the "Motion.").

## RELEVANT PROCEDURAL BACKGROUND

On November 2, 2022, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on disability, national origin, and race. (ECF No. 1-14).  In the Charge, Plaintiff also broadly concluded "I believe I was discriminated against because of my sex [female] . . . and my age [49]." (*Id.*).  On September 27, 2024, the EEOC issued Plaintiff a Determination and Notice of Right to Sue. (ECF No. 1-3).  On December 16, 2024, Plaintiff filed the Complaint. (ECF No. 1).

## RELEVANT COMPLAINT ALLEGATIONS[1]

Plaintiff was employed by Emursive for approximately four months before she was terminated for failing to report to work. (Compl. at 3 ¶ 1, 57 ¶ 6, ECF No. 1-2 at 48).  In her Complaint, Plaintiff broadly contends that she was discriminated against based upon her membership in an assortment of protected classes and retaliated against for reporting workplace concerns.  While the precise causes of action that Plaintiff asserts against Defendants are difficult to ascertain, a generous reading of the Complaint appears to outline the following claims: (i) race, national origin, and sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"),

---

[1] The allegations provided herein are taken from the Complaint and attached exhibits. (ECF No. 1).

42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (ii) age discrimination under the Age Discrimination in Employment Act ("ADEA"), the NYSHRL and the NYCHRL; (iii) retaliation in violation of Title VII, § 1981, the ADEA, the NYSHRL, and the NYCHRL; and (iv) violation of the Family and Medical Leave Act ("FMLA"). The Complaint's core allegations are summarized herein.

## I.    THE PARTIES

Emursive is a New York City-based production company that operates a number of theater productions, including the recently-closed immersive theater production *Sleep No More* (the "Show"). (Compl. at 3 ¶ 1, 4-5 ¶¶ 1-3). Hochwald and Karpati are the principal owners of Emursive. (Compl. at 5 ¶ 5). Criswell is Emursive's Director of Human Resources. (Compl. at 5 ¶ 6). Boyd is Emursive's Director of Performance and Production, and supervised Plaintiff at all relevant times. (Compl. at 5 ¶ 10).

Plaintiff identifies as a Black woman of Nigerian descent who was born in 1973. (ECF No. 1 at 4). On December 20, 2021, Emursive hired Plaintiff as the Show's Company Manager. (Compl. at 3 ¶ 1). As Company Manager, Plaintiff was responsible for "support[ing] all administrative activities for the [Show] and act[ing] as the principal liaison between the artists and theater company." (ECF No. 1-2 at 45). Among other things, Plaintiff's job duties included: (i) being present "during all rehearsals and performances for [the Show]"; (ii) attending daily meetings with cast, crew and onsite management; (iii) facilitating new employee onboarding; (iv) assisting with auditions and casting sessions; (v) coordinating onsite catering and hospitality needs; and (vi) arranging transportation and lodging for visiting artists. (*Id.*).

## II.    RELEVANT ALLEGATIONS

Plaintiff appears to claim that Defendants discriminated and/or retaliated against her based

on the events alleged below.

### A.    Boyd Asks Plaintiff Where She Lives

Plaintiff claims that, within two weeks of her hire, Boyd asked Plaintiff which part of Queens she lived in, to which Plaintiff responded, "Long Island City." (Compl. at 8 ¶ 2). Plaintiff alleges that Boyd responded, "Huh, oh, that part of Queens." (Compl. at 8 ¶ 3). Plaintiff "perceived" Boyd's response to imply that Boyd had "already wrongly determined and judged which side of Queens Plaintiff resided in" because of her race. (*Id.*).

### B.    Plaintiff's Job Duties Conflict With New Employee Orientation

On January 3, 2022, consistent with her job duties, Plaintiff was tasked with overseeing the move of the Company's visiting rehearsal director into a short-term rental apartment. (Compl. at 9 ¶ 4; ECF No. 1-2 at 45). Due to delays during the move, Plaintiff arrived late to a New Employee Orientation scheduled on the same day. (Compl. at 9 ¶ 5). Although the tasks that Plaintiff performed were consistent with her job description, Plaintiff claims that she was "targeted" and "relegated" to perform them, causing her to "basically miss" orientation. (Compl. at 9 ¶¶ 4-5).

### C.    Plaintiff's Office Relocation

Plaintiff claims that, within three weeks of her hire, Boyd began to cease soliciting comments from her during staff meetings. (Compl. at 9-10 ¶¶ 10-16). Plaintiff allegedly began to "interject her comments at the end of staff meetings while attendees were leaving." (Compl. at 10 ¶ 16). Plaintiff contends that Boyd subsequently moved her office away from the work space she had previously shared. (Compl. at 10 ¶ 17). Plaintiff "internalized" this decision "as retaliatory and punishment for speaking during staff meetings." (Compl. at 10 ¶ 18).

### D.    Karpati's Alleged Remark

Plaintiff alleges that in late January 2022, she met Karpati in an elevator and he asked her the origin of her name. (Compl. at 11 ¶ 25). Upon learning that Plaintiff was Nigerian, Plaintiff

claims that Karpati told her, "Out of all the African countries, I hate Nigeria. A Dutch friend of mine started a copy business in Nigeria and they ripped him off. They took his money. There is just so much corruption there." (Compl. at 11-12 ¶¶ 25-30).[2]

### E. Plaintiff Unilaterally Circulates A COVID-19 Survey

In early February 2022, Criswell and Hochwald held an all-staff meeting announcing that Emursive would no longer require audience members to be tested for COVID-19 before attending the Show. (Compl. at 16 ¶ 1). Plaintiff sent a written recap of this meeting to Criswell, Boyd, and Hochwald, suggesting that Emursive survey cast members to identify potential "hot spots" for COVID-19 transmission in the theater. (Compl. at 16 ¶ 8; ECF No. 1-2 at 66-67). Boyd responded, "I'd love to be in the loop with each step before things are announced to cast and crew [on COVID-19] so I'm aware and can be part of the process." (ECF No. 1-2 at 65). Without formal approval from Emursive's human resources department or from management, Plaintiff subsequently circulated her survey via WhatsApp to cast and crew members. (Compl. at 17 ¶¶ 10, 12). On February 6, 2022, Criswell emailed Plaintiff to ask for her to seek his approval before circulating surveys to the Show's cast and crew. (ECF No. 1-2 at 79). Upon receiving Criswell's request, Plaintiff emailed the Individual Defendants on February 6, 2022 claiming that Criswell was trying to "censor" her, and criticized the Individual Defendants' leadership style, which Plaintiff felt "may fall very closely to retaliation and discrimination." (ECF No. 1-2 at 78-79; Compl. 18 at ¶ 18).

On February 9, 2022, the Individual Defendants met with Plaintiff, but she stated that she was not "prepared to discuss [her] claims" at that time. (Compl. at 21 ¶ 1, 22 ¶ 7). Plaintiff claims that Hochwald and Karpati then "essentially ganged up on" her in an "attempt to intimidate and force her to speak." (Compl. at 22 ¶ 10).

---

[2] Karpati vehemently denies making this statement.

On February 10, 2022, Hochwald emailed Plaintiff to thank her for attending the meeting and reassuring her that Emursive had a "zero tolerance policy for discrimination, harassment, and discrimination." (Compl. at 25 ¶¶ 9-14; ECF No. 1-2 at 100).  Hochwald further informed Plaintiff "if you would still like to pursue a concern or complaint of discrimination, retaliation or any other workplace issue, [Emursive] certainly want[s] to support you and address it." (ECF No. 1-2 at 100).  Finally, Hochwald offered Plaintiff another time to meet when she was ready to discuss her concerns. (*Id.*).

### F.    <u>Emursive Investigates Plaintiff's Complaints</u>

On February 10, 2022, Plaintiff allegedly received a company-wide email notifying her that Karpati, Hochwald, and an accounting team member's approval would be required for all new hires. (Compl. at 24 ¶ 4).  Plaintiff perceived this email as a "subliminal message" with "retaliatory sentiment" that "basically [told]" her that she was unwanted. (Compl. at 24 ¶¶ 5-6).  Shortly thereafter, Plaintiff claims that she learned that a Black male dancer in the Show had resigned. (Compl. at 25 ¶ 16, 26 ¶ 17).  As a result, Plaintiff claims that her "state of being was shattered," causing her to experience symptoms of anxiety and seek admission to the Mt. Sinai Psychiatric Ward. (Compl. at 27 ¶ 27, 28 ¶ 33, 30 ¶ 5).  Plaintiff was discharged on February 13, 2022 and traveled to Washington D.C. (Compl. at 30 ¶ 10).  On the same day, Plaintiff contacted Criswell to request sick leave between February 14-16, 2022, and her request was approved. (Compl. at 31 ¶ 1).

On February 17, 2022, Plaintiff submitted a written complaint to Criswell alleging race and age discrimination. (Compl. at 31 ¶ 4; ECF No. 1-2 at 6-26).  In her complaint, Plaintiff stated that she wished to "work remotely until a thorough investigation . . . occurred." (Compl. at 31 ¶ 5; ECF No. 1-2 at 26).  Criswell responded and informed Plaintiff that "[w]hile your position as a Company Manager requires that you report to work on a daily basis, we will allow you to work remotely on a

temporary basis while [an] investigation is being conducted." (Compl. at 32 ¶ 7).  Defendants subsequently retained an outside investigator (the "Investigator") to investigate Plaintiff's complaint. (Compl. at 33 ¶¶ 15-16).  The Investigator met with Plaintiff virtually on February 24, 2022, and Plaintiff provided the Investigator with additional documentation regarding her concerns. (Compl. at 33 ¶¶ 17, 21).

Plaintiff claims that, while working remotely in late February 2022, she began to experience "concussion-like symptoms," including dizziness, vertigo, and "a high sensitivity to light and sound." (Compl. at 34 ¶ 26).  On March 9, 2022, Plaintiff was allegedly diagnosed with vestibular dysfunction by neurologist Dr. Komar Patel, and referred to visual, physical and occupational therapy. (Compl. at 34 ¶ 29, 35 at ¶ 33).  On March 11, 2022, Plaintiff emailed Criswell to notify him that she had "received a doctor's order . . . to begin therapy" and that she "wish[ed]" to complete treatment in Washington, D.C. (Compl. at 35 ¶ 34).

On March 14, 2022, Plaintiff met with the Investigator  and Hochwald via Zoom to discuss the results of the investigation. (Compl. at 36 ¶¶ 43-44).  The Investigator informed Plaintiff that her investigation "did not find evidence of discrimination," but had identified opportunities for improvement with "leadership practices and communications." (Compl. at 37 ¶ 48).  Hochwald subsequently invited Plaintiff to return to work, noting that Emursive had been required to delegate certain of her in-person tasks to other co-workers in Plaintiff's absence. (Compl. at 38-39 ¶¶ 64-65, 69, 77).  To facilitate Plaintiff's return to in-person work, Hochwald requested a meeting, which Plaintiff declined to attend unless it was virtual. (Compl. at 39 ¶¶ 69-70).

### G.    Plaintiff Refuses To Report To Work And Is Terminated

On March 16, 2022, Criswell emailed Plaintiff to inquire about her request to complete therapy sessions in Washington, D.C. (Compl. at 40 ¶ 3; ECF No. 1-2 at 136).  More specifically,

Criswell sought to clarify whether Plaintiff was "requesting to continue to work remotely for [4-6 weeks]" or "requesting a leave of absence." (*Id.*). Criswell also asked Plaintiff to provide a medical certification no later than March 18, 2022 which would permit Emursive to evaluate Plaintiff's request for an accommodation and identify a potential reasonable accommodation. (ECF No. 1-2 at 136). Criswell specifically informed Plaintiff that her certification needed to contain the following information: (i) the nature, severity, and duration of her impairment; (ii) the activity or activities the impairment limited; (iii) the extent to which the impairment limited her ability to perform those activities; and (iv) the length of her requested accommodation. (*Id.*) Finally, Criswell provided Plaintiff with information on how to request short-term disability benefits if she intended to take a leave of absence. (*Id.*).

On March 16, 2022, Plaintiff refused to provide the medical certification that Criswell requested, citing her belief that "HIPAA laws" precluded her from doing so, and clarified that she was not seeking a leave of absence. (ECF No. 1-2 at 138). The following day, Criswell reminded Plaintiff that her role required her to work on-site to complete the essential functions of her job, and advised Plaintiff that her failure to provide a certification substantiating her alleged need for an accommodation could result in a denial of her request. (ECF No. 1-2 at 140-41).[3] In response, Plaintiff asked for "an opportunity to research the request [Criswell had] made with the NY Department of Labor and Mayor's Office[.]" (Compl. at 43 ¶ 29; ECF No. 1-2 at 140).

On March 21, 2022, Plaintiff submitted therapy referrals to Criswell, along with a letter clarifying that she was "not requesting accommodation for a certified disability" as the basis for her request to work remotely for an additional six weeks. (Compl. 44 at ¶ 33; ECF No. 1-2 at 147). The

---

[3] In her Complaint, Plaintiff acknowledges that the essential functions of her job could not be performed remotely, but asserts in conclusory fashion that she should have been permitted to attempt to perform them from Washington, D.C. (Compl. at 46 ¶¶ 53-54).

following day, Criswell notified Plaintiff that her request was denied because her role simply could not be performed remotely for an extended period of time, referring Plaintiff to her job description. (ECF No. 1-2 at 147).  Criswell advised Plaintiff that her temporary remote work arrangement pending Emursive's investigation of her complaints was no longer tenable and had required Emursive to "backfill several of [her] on-site responsibilities that [could not] be performed virtually, [and had] created difficult staffing and operational issues for the company." (*Id.*).  Significantly, however, Criswell informed Plaintiff that Emursive would permit her to continue to work remotely until March 28, 2022 in order to provide her with sufficient time to identify visual, physical and/or occupational therapists in New York City. (ECF No. 1-2 at 148).

On March 25, 2022, Plaintiff emailed Criswell to notify him that she had contacted a representative from the New York Insurance Fund to "discuss next steps for obtaining workers compensation." (Compl. at 47 ¶¶ 1-2; ECF No. 1-2 at 153).  Plaintiff subsequently asked to use her accrued sick leave and paid time off ("PTO") to pursue "more aggressive care and treatments" for her alleged therapy needs (Compl. at 47 ¶ 3; ECF No. 1-2 at 153).

On March 29, 2022, Criswell approved Plaintiff's request to use paid leave on March 29 and 30, but advised her that Emursive could not grant her request to continue to work remotely beyond March 30. (Compl. at 48 ¶ 11; ECF No. 1-2 at 155-56).  In the same email, Criswell reminded Plaintiff that she had failed to provide a medical certification substantiating her alleged need for an ongoing remote work accommodation, and asked her to submit the same no later than March 30 if she intended to do so. (ECF No. 1-2 at 155).  In the alternative, Criswell encouraged Plaintiff to identify appropriate therapists in New York City and offered to "continue the conversation regarding how [Emursive] can support you once you return." (*Id.*).

On the same day, Plaintiff inquired about her remaining PTO balance and asked for an additional extension of her time to provide a medical certification to April 1. (ECF No. 1-2 at 162). In response, Criswell provided Plaintiff with her leave balance, agreed to permit Plaintiff to use PTO on March 30 and 31, and offered to extend Plaintiff's time to provide a medical certification to March 31. (ECF No. 1-2 at 158, 166).  On March 31, Plaintiff submitted a medical certification from Dr. Edward Hochman in Washington, D.C., stating as follows:

> The patient has vestibular dysfunction. This limits her function when exposed to loud noises or bright lights. A reasonable accommodation would be to have adjustments made in her work so that she does not have exposure to loud noises or bright lights, *such as* remote work.

(Compl. at 51 ¶ 36; ECF No. 1-8) (emphasis added).

On April 1, 2022, Criswell notified Plaintiff that her certification from Dr. Hochman was incomplete because, among other things, it failed to specify which activities her impairment limited and then length of her requested accommodation. (Compl. at 51 ¶ 40; ECF No. 1-2 at 171). Nevertheless, Emursive committed to "work[ing] with [Plaintiff] to ensure that the limitations currently described in Dr. Hochman's letter are addressed." (ECF No. 1-2 at 171).  More specifically, Emursive offered to facilitate Plaintiff's return to in-person work by providing her with "a quiet work location without bright lighting" and excusing her from portions of Show rehearsals and performances that included loud noise or strobe lighting. (Compl. at 52 ¶ 49; ECF No. 1-2 at 171).  Criswell notified Plaintiff that Emursive expected her to return to work no later than April 4. (ECF No. 1-2 at 171).

On the same day, Plaintiff responded to Criswell complaining that Emursive was "unwilling to compromise with a short-term request for remote work" and announcing her "decision to go on workers' compensation." (Compl. at 55 ¶ 13; ECF No. 1-2 at 184).  Criswell responded by informing Plaintiff that Emursive's carriers had not approved Plaintiff for workers' compensation or

short-term disability benefits, and invited Plaintiff to participate in the interactive process to identify "alternative reasonable accommodations other than remote work" if she wished to do so. (Compl. at 55-56 ¶¶ 14-15; ECF No. 1-2 at 182-83). Criswell further reminded Plaintiff that she was expected to return to work on April 4. (ECF No. 1-2 at 183).

Plaintiff failed to report to in-person work on April 4 as requested or otherwise engage in the interactive process. (Compl. at 56 at ¶¶ 18-23). On April 6, 2024, Emursive notified Plaintiff that her employment had been terminated "based on [her] continued failure to report to work at [Emursive's] premises in New York or to provide [Emursive] with appropriate documentation justifying [her] continued absence from work." (Compl. at 57 ¶ 6; ECF No. 1-2 at 48).

## ARGUMENT

## I.    APPLICABLE LAW

Rule 12(b)(6) permits dismissal of a cause of action where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Smolen v. Fisher*, No. 12 Civ. 1856, 2012 WL 3609089, at *2-3 (S.D.N.Y. Aug. 23, 2012). First, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim. *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and the complaint "must contain enough factual amplification to render a claim plausible." *Id.; Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 742 F. Supp. 2d 382, 389 (W.D.N.Y. 2010) (citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, however, dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

## II.    PLAINTIFF'S DISCRIMINATION CLAIMS MUST BE DISMISSED

Read generously, the Complaint appears to variously assert claims for race, national origin, age, and sex discrimination under Title VII, § 1981, the ADEA, the NYSHRL, and the NYCHRL. For the reasons set forth below, each cause of action must be dismissed.

### A.    Applicable Standard

"The pleading standards are generally the same for Title VII, [S]ection 1981, and NYSHRL claims." *Cardwell v. Davis Polk & Wardwell LLP,* 2020 WL 6274826, at *16 (S.D.N.Y. Oct. 24, 2020).  Under these statutes, "for a discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023).

While courts evaluate discrimination claims under the NYCHRL more liberally, the plaintiff still must  plead "differential treatment – that she is treated less well – because of a discriminatory intent." *Deveaux v. Skechers USA, Inc*, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020).  More specifically, "a plaintiff must allege that (1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she was subject to an unfavorable change or treated less well than other employees, and (4) the unfavorable change or different treatment occurred under circumstances giving rise to an inference of discrimination." *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 104 (S.D.N.Y. 2024).

### B.    Plaintiff's Race Discrimination Claims Must Be Dismissed

Plaintiff appears to claim that her request to work remotely for an extended period was denied and that she was terminated because of her race.  In support, Plaintiff principally alleges that: (i) Emursive employed more White employees than Black employees (Compl. at 5 ¶ 8); (ii)

two Black employees resigned between January and June 2022 (Compl. at 6 ¶ 14); (iii) Boyd asked

where Plaintiff lived and responded "Huh, oh, that part of Queens" (Compl. at 8 ¶ 3); (iv) Boyd did

not solicit Plaintiff's comments during meetings, but did solicit them from White managers (Compl.

at 10 ¶¶ 11-12); (v) Boyd booked an Uber for a White performer with a torn ACL, but booked one

for Plaintiff only after multiple requests (Compl. at 13 ¶ 40); (vi) while working remotely, Plaintiff

was not permitted to attend Department Head meetings via Zoom, while other unspecified managers

were (Compl. at 34 ¶ 23); (vii) a White performer was placed on leave through Emursive's workers'

compensation carrier to receive treatment for an on-the-job injury, while Plaintiff was not (Compl.

at 42 ¶¶ 16-19);[4] and (vii) an unidentified White former Company Manager was permitted to work

remotely for "three plus years," while Plaintiff was not. (Compl. at 46 ¶ 50).

Evaluating her allegations as broadly as possible, the only potential adverse employment

actions that Plaintiff identifies in the Complaint are: (i) the denial of Plaintiff's request to work

remotely for an additional six weeks due to the need for her to perform the essential functions of her

job on-site; and (ii) Plaintiff's termination for failing to report to work.  Plaintiff's race

discrimination claims must be dismissed because she fails to plead, as she must, that either action

was motivated by discriminatory animus.  The bulk of Plaintiff's efforts to establish an inference of

discrimination are limited to alleged race-neutral actions and/or comments by Boyd, who is not

alleged to have played any role in assessing Plaintiff's remote work request or her termination. *See*

*Mitchell*, 745 F. Supp. 3d at 94 (dismissing race discrimination claim where "Plaintiff fail[ed] to

provide sufficient contextual information to support a plausible inference that the facially race-

neutral terms used by [individual defendants] were in fact racially motivated.").

---

[4] Plaintiff makes this allegation while simultaneously pointing out that she never requested a leave
of absence from Emursive because she did not require one. (Compl. at 44 ¶ 30).

At most, Plaintiff claims that an unidentified White former Company Manager was permitted to work remotely for "three plus years" while Plaintiff was not, and relies on her predecessor's LinkedIn profile attached to her Complaint to support this contention. (Compl. at 46 ¶ 50). However, even a cursory review of this profile reveals nothing of the sort. (ECF No. 1-2 at 150-51). Instead, the profile states that, between 2013 and 2016, the predecessor:

> Supervised the 70-member cast of *Sleep No More*. Worked in a 24/7 on-call capacity to promptly handle emergency situations, injuries, and resolve issues. Managed biannual audition process of 300+ performers . . . Revamped the performer contract model . . . [and] [c]ollaborated with Rehearsal Directors and [the] artistic team to ensure the artistic integrity of *Sleep No More*.

(*Id.*). Stated simply, Plaintiff's conclusory contentions are belied by her own Complaint attachment, and thus may not be considered to support her race discrimination claims. *Mumin v. N.Y.C.*, No. 1:23-CV-03932, 2024 WL 5146085, at *24 (S.D.N.Y. Dec. 17, 2024) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (citations omitted). Plaintiff offers no other non-speculative evidence in support of her claims that Emursive's decisions to deny her remote work request or terminate her employment were the product of discriminatory animus, and her race discrimination claims must accordingly be dismissed. *See Cardwell*, 2020 WL 6274826, at *22 ("[T]o plausibly allege a discrimination claim, it is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus.").

## C.   Plaintiff's National Origin Discrimination Claims Must Be Dismissed

Likewise, the Complaint fails to plead that Plaintiff suffered an adverse action because of her Nigerian national origin. Plaintiff's attempt to establish an inference of national origin discrimination is limited to her allegation that in January 2022, Karpati told her that he "hate[d]

Nigeria" because his friend encountered corruption there. (Compl. at 11-12 ¶¶ 26-33). However, New York law is clear that pointing to a stray remark – even if made by a decisionmaker, which Karpati is not alleged to be with respect to the adverse actions identified in the Complaint – is insufficient to plead a discrimination claim. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (supervisor's stray remarks failed to state a discrimination claim where "the Complaint does not allege that the remarks were related to the decision-making process resulting in Plaintiff's termination."). As a result, Plaintiff's national origin discrimination claim must be dismissed as well.

### D.    Plaintiff's Age Discrimination Claims Must Be Dismissed

The Complaint similarly fails to state a claim for age discrimination. The Complaint is devoid of any allegations even tending to show that Plaintiff suffered an adverse action because she is over 40 beyond her claims that: (i) Boyd, who is not alleged to have denied Plaintiff's remote work request or decided to terminate her, is under 40; and (ii) Plaintiff "presumes" that she was the only department manager over the age of 40. (Compl. at 6 ¶¶ 12-13). Such spare and conclusory allegations, unconnected from any alleged adverse employment action, utterly fail to state a claim for age discrimination. *See Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *2 (2d Cir. Mar. 6, 2023) ("[T]he fact that [plaintiff] was the only employee of a protected class in a department does not, standing alone, give rise to an inference of discriminatory motive"); *Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 675, 2021 WL 1225875, at *11 (S.D.N.Y. Mar. 31, 2021) (dismissing age discrimination claim in the absence of allegations of discriminatory motive).

### E.    Plaintiff's Sex Discrimination Claims Must Be Dismissed

Finally, Plaintiff's sex discrimination claims must be dismissed. The Complaint is devoid of any allegation that Plaintiff was treated differently because of her sex. Instead, and at most,

Plaintiff checked a box on the cover sheet attached to her Complaint stating that she suffered sex discrimination. (ECF No. 1 at 4). This is plainly insufficient, and Plaintiff's sex discrimination claims must accordingly be dismissed out of hand. *See Acosta v. Kennedy Children's Ctr.*, No. 24 CIV. 3358, 2025 WL 70141, at *8 (S.D.N.Y. Jan. 10, 2025) (dismissing sex discrimination claims when complaint was "devoid of any allegations plausibly supporting [] inference" that plaintiff was treated less well because of her sex); *Blige v. City Univ. of N.Y.*, No. 115CV08873, 2017 WL 498580, at *10 (S.D.N.Y. Jan. 19, 2017) (dismissing sex discrimination claims where complaint was devoid of supporting details).

**III.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE DISMISSED**

In the Complaint, Plaintiff appears to allege that that she suffered a race, national origin, age, and/or sex-based hostile work environment in violation of Title VII, § 1981, the ADEA, the NYSHRL, and/or the NYCHRL. For the reasons set forth below, these claims fail as well.

Hostile work environment claims under Title VII, § 1981 and the ADEA require pleading that "[the plaintiff's] workplace was permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Maines v. Last Chance Funding, Inc.*, No. 2:17-cv-05453, 2018 WL 4558408, at *9 (E.D.N.Y. Sept. 21, 2018) (internal citations omitted). Under the NYSHRL (for hostile work environment claims post-dating October 11, 2019) and NYCHRL, the plaintiff must "plausibly allege that she was treated less well than other employees due to her protected class membership." *Luzunaris v. Baly Cleaning Servs.*, No. 23-cv-11137, 2024 WL 3926708, at *17 (S.D.N.Y. July 29, 2024).

The basis for Plaintiff's race-based hostile work environment claim is not entirely clear. While Plaintiff claims, in conclusory fashion, that she was subject to certain "microaggressions"

during her four-month employment tenure, such claim appears to be the result of Plaintiff's subjective interpretation of race-neutral conduct.[5]  At most, Plaintiff contends in conclusory fashion that Boyd declined to solicit her feedback during, and/or excluded her from, meetings at unspecified times while recognizing or including White managers. (Compl. at 10 ¶¶ 11-16).  New York courts have routinely held that such allegations cannot state a hostile work environment claim. *See James v. Borough of Manhattan Cmty. Coll.*, No. 20-cv-10565, 2021 WL 5567848, at *9 (S.D.N.Y. Nov. 29, 2021) (conclusory allegation that supervisor gave preferential treatment to co-workers could not establish hostile work environment claim); *Cardwell*, 2020 WL 6274826, at *28 (dismissing hostile work environment claim premised on conduct such as "fewer emails, [and] no eye-contact in the halls" further described as "a kind of social ostracism" or "passive-aggressive behavior").

Plaintiff's national origin, age, and sex-based hostile work environment claims fare no better.  Like her national origin discrimination claim, Plaintiff premises her national origin-based hostile work environment claim exclusively on Karpati's alleged comment.  However, this isolated comment – unconnected to any adverse action that Plaintiff allegedly suffered – is no more than a stray remark that cannot state a hostile work environment claim. *See Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *16 (S.D.N.Y. Mar. 30, 2022) (dismissing hostile work environment claim based on three alleged stray remarks); *see also Waldo v. N.Y.C. Health & Hosps. Corp.*, No. 06CV2614, 2009 WL 2777003, at *6 (E.D.N.Y. Aug. 31, 2009).  Moreover, the Complaint is entirely devoid of any allegations even tending to support a claim that Plaintiff was

---

[5] By way of example only, Plaintiff claims that she: (i) "perceived" that Boyd had "wrongly determined and judged which side of Queens Plaintiff resided in" (Compl. at 8 ¶ 3); (ii) "knew she was being intentionally marginalized and erased" when Hochwald "expressed frustration" about a workplace issue (Compl. at 15 ¶¶ 53-59); and (iii) perceived that a company-wide email about a change in hiring policy was a "subliminal message" targeting her age, national origin and race. (Compl. at 24 ¶¶ 4-7).  Conclusory allegations concerning a plaintiff's personal perceptions of facially neutral incidents cannot sustain a hostile work environment claim. *Ndongo v. Bank of China Ltd.*, No. 22-cv-05896, 2023 WL 2215261, at *8 (S.D.N.Y. Feb. 24, 2023).

subjected to a hostile work environment on the basis of her age and sex, and such claims must be summarily dismissed as a result. *See DeFranco v. N.Y. Power Auth.*, 731 F. Supp. 3d 479, 494 (W.D.N.Y. 2024) (granting employer's motion to dismiss hostile work environment claim when plaintiff "alleged no facts that plausibly connect the alleged hostile work environment to his age.").

## IV.  **PLAINTIFF'S RETALIATION CLAIMS MUST BE DISMISSED**

Plaintiff's Complaint is replete with vague and conclusory allegations that she suffered retaliation during her employment.  Interpreting those allegations generously, Plaintiff appears to claim that Defendants retaliated against her in violation of Title VII, § 1981, the ADEA, the NYSHRL. and/or the NYCHRL in the following specific ways: (i) Boyd relocated Plaintiff's office after she "[spoke] during staff meetings" in or around January 2022 (Compl. at 10 ¶¶ 17-18); and (ii) Emursive terminated Plaintiff's employment on April 6, 2022 because of her January 19 and 22, 2022 complaints to Criswell, which she reiterated to Hochwald, Karpati and Boyd on February 6 and February 17, 2022 (Compl. at 12 ¶ 36, 18 ¶ 18, 31 at ¶ 4). Such claims must be dismissed.

To state a claim for retaliation under Title VII, § 1981, the ADEA, and the NYSHRL, Plaintiff must plead: "(1) [s]he participated in a protected activity known to the defendant; (2) that an adverse employment action was taken, disadvantaging [her] and (iii) that there is a causal connection between the protected activity and the adverse employment action." *Bakeer v. Nippon Cargo Airlines Co., Ltd.*, No. 09 CV 3374, 2011 WL 3625103, at *38 (E.D.N.Y. July 25, 2011); *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457-58 (E.D.N.Y. 2014).  The standard for pleading a retaliation claim under the NYCHRL is the same, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Harris v. Office of N.Y. State Comptroller*, No. 20-CV-8827, 2022 WL 814289, at *19 (S.D.N.Y. Mar. 17, 2022).

Plaintiff's claim that her office was relocated because she "[spoke] during staff meetings" fails because Plaintiff fails to adequately allege that she engaged in protected activity. The term "protected activity includes both opposing discrimination proscribed by statute and . . . participating in proceedings [protected by statute]." *Sutter v. Dibello*, No. CV 18-817, 2019 WL 4195303, at *14 (E.D.N.Y. Aug. 12, 2019); *Luzunaris*, 2024 WL 3926708, at *18-19. "Generalized complaints, however, are insufficient; complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the applicable discrimination statute." *Id.* Here, Plaintiff does not contend that she opposed conduct prohibited by law during staff meetings. Instead, she simply complains that she was required to "interject" her business-related comments at the end of such meetings without being called on, and "internalized" that her office move resulted from such conduct. (Compl. at 10 ¶¶ 12, 16, 18). As a result, Plaintiff has failed to plead that she engaged in protected activity, and her retaliation claim premised on her office move must be dismissed. *Lewis v. Kaleida Health*, No. 20-CV-1860, 2022 WL 4485288, at *7-8 (dismissing Title VII retaliation claim where plaintiff failed to plausibly plead that she engaged in protected activity); *Shukla v. Deloitte Consulting LLP*, No. 1:19-cv-10578, 2020 WL 8512852, at *10 (S.D.N.Y. Nov. 17, 2020) (same under Title VII, NYSHRL, and NYCHRL); *Fouche*, 64 F. Supp. 3d at 458.

Likewise, Plaintiff fails to plead that her termination resulted from retaliatory animus, rather than her refusal to perform the essential, in-person functions of her job. At most, Plaintiff attempts to manufacture a causal connection by claiming that she was terminated approximately two-and-a-half months after complaining of discrimination. However, "the passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged." *Thior v. JetBlue Airways, Inc.*, No. 13-cv-6211, 2016 WL 5092567, at *6 (E.D.N.Y. Sept. 19, 2016) (citations omitted) (dismissing Title VII, NYSHRL, and NYCHRL retaliation claims).

But even if Plaintiff could plead a causal connection based on temporal proximity alone, it is readily severed by Plaintiff's intervening and well-documented refusal to report to work. *See Troeger v. JetBlue Airways Corp.*, No. 23-CV-10859, 2024 WL 5146185, at *13 (S.D.N.Y. Dec. 17, 2024) (granting motion to dismiss retaliation claim where intervening events and performance issues severed any causal connection between protected activity and adverse action); *Brennan v. Legal Aid Soc'y*, No. 19-CV-7756, 2020 WL 6875059, at *5 (S.D.N.Y. Nov. 23, 2020) (inference of causation was "defeated by the intervening events taking place between Plaintiff's protected activity and the termination of her employment") (collecting cases); *Soto v. Marist Coll.*, No. 17-CV-7976, 2019 WL 2371713, at *11 (S.D.N.Y. June 5, 2019) (plaintiff's intervening absence from work severed any causal connection between protected activity and termination).

## V.    PLAINTIFF'S FMLA CLAIM MUST BE DISMISSED

The Complaint appears to assert a claim against Defendants arising under the FMLA. (Compl. at 1).  To state a claim for interference with FMLA rights, the plaintiff must plead that: (i) she is an eligible employee under the FMLA; (ii) the defendant is an employer under the FMLA; (iii) she was entitled to leave under the FMLA; (iv) she gave notice to her employer of her intention to take FMLA leave; and (v) she was denied benefits to which she was entitled under the FMLA. *Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 408 (S.D.N.Y. 2007).  Plaintiff includes none of the foregoing allegations in her Complaint, nor could she.  Indeed, the face of Plaintiff's Complaint makes clear that she was never eligible for FMLA leave because she worked for Emursive for only four months. 29 U.S.C.A. § 2611(2)(A) (employees must have worked for employer for at least twelve months to be eligible for FMLA leave); *Collier v. Boymelgreen Devs.*, No. 06 CV 5425, 2007 WL 1452915, at *3 (E.D.N.Y. May 17, 2007) (dismissing FMLA claim

where plaintiff failed to plead eligibility for FMLA leave).[6]  As a result, Plaintiff's FMLA claim must be dismissed.

## VI.    PLAINTIFF'S TITLE VII AND ADEA CLAIMS MUST BE DISMISSED AGAINST THE INDIVIDUAL DEFENDANTS

Finally, Plaintiff's Title VII and ADEA claims must be dismissed against the Individual Defendants because neither statute provides for individual liability. *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 292 (E.D.N.Y. 2016); *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 196 (E.D.N.Y. 2016).

## CONCLUSION

For the reasons set forth above, this Court should grant Defendants' Motion in all respects and provide such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 18, 2025

**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP

By:    */s/ Jonathan Stoler*
Jonathan Stoler
30 Rockefeller Plaza
New York, New York 10112
Tel.:  (212) 653-8700
Fax:  (212) 653-8701
jstoler@sheppardmullin.com
*Attorneys for Defendants Carolyn Boyd, Rick Criswell, Jonathan Hochwald, Arthur Karpati, Emursive Productions, LLC, and PDNYC, LLC*

---

[6] Even if Plaintiff could somehow assert an FMLA claim against Defendants, such claim would be untimely.  FMLA claims are subject to a two-year statute of limitations.  Plaintiff was terminated on April 6, 2022, more than two years before she filed her Complaint on December 16, 2024. *Melendez v. Cablevision Sys. Corp.*, No. 17-cv-9161, 2018 WL 2727890, at *4 (S.D.N.Y. June 6, 2018).

## <u>WORD COUNT CERTIFICATION</u>

I, Jonathan Stoler, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c).  According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 6,451 words in the document.

*/s/ Jonathan Stoler*
Jonathan Stoler
