Sheppard

October 14, 2026

+1.212.653.8184
lstone@sheppard.com

**VIA ECF**

Hon. Arun Subramanian
U.S. District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

Re: *Egbufor v. Boyd, et al.,* No. 1:24-cv-09779-AS

Dear Judge Subramanian:

We represent Defendants Carolyn Boyd, Rick Criswell, Jonathan Hochwald, Arthur Karpati, Emursive Productions, LLC and PDNYC, LLC (collectively, "Defendants") in the above-referenced matter. Defendants respectfully submit this letter in response to Plaintiff D. Dumebi Egbufor's ("Plaintiff") October 7, 2026 letter, which Your Honor has construed as a motion for reconsideration of this Court's decision to enforce Plaintiff's decision to resolve her claims against Defendants for $25,000 (the "Motion"). (ECF Nos. 60-61).

## I. RELEVANT FACTS

### A. Plaintiff Accepts $25,000 To Fully And Finally Settle Her Claims Against Defendants

The facts supporting the Motion and the instant opposition are familiar to this Court. On December 16, 2024, Plaintiff commenced this action, asserting claims for retaliation and race, national origin, sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the New York State Human Rights Law, the New York City Human Rights Law, and the Age Discrimination in Employment Act, and the Family and Medical Leave Act. (ECF No. 1-1). On February 6, 2026, this Court dismissed all of Plaintiff's claims with the exception of certain of her claims for race discrimination, national origin discrimination, and retaliation. (ECF No. 36).

On June 23, 2026, after being referred to mediation, the parties appeared for a virtual mediation before appointed mediator Joseph Saltarelli ("Mr. Saltarelli"). (ECF No. 47 at ¶ 3). Plaintiff was represented by appointed pro bono counsel Susanne Toes Keane ("Ms. Keane") and Fatima Oedraogo ("Ms. Oedraogo") of the City Bar Justice Center's Federal Pro Se Legal Assistance Project for purposes of mediation. (*Id.* at ¶ 4). At approximately 5:00 PM, after seven hours of mediation, Emursive Productions, LLC and PDNYC, LLC (together, the "Corporate Defendants") offered Plaintiff $25,000 (payable in four installments and subject to favorable tax treatment) and an internal classification of her separation from PDNYC as a voluntary resignation in exchange for her dismissal of this action and execution of a release of claims containing standard provisions, including confidentiality and non-disparagement. (*Id.* at ¶ 7). Ms. Keane

told the Corporate Defendants and Mr. Saltarelli that Plaintiff had accepted this offer. (*Id.* at ¶ 8). To assist the parties in finalizing a subsequent settlement agreement and memorialize the parties' oral settlement agreement, Mr. Saltarelli subsequently suggested that the parties complete a memorandum of understanding (the "Agreement"), to which the undersigned and Ms. Keane agreed. (*Id.* at ¶ 9).

At approximately 5:30 PM, Mr. Saltarelli, Ms. Keane and the undersigned met virtually to review the Agreement. (*Id.* at ¶ 12). During that meeting, Ms. Keane and the undersigned negotiated certain minor modifications and clarifications to the Agreement to ensure that the parties' oral agreement was adequately captured and that the parties were on the same page with respect to what the forthcoming formal settlement agreement would contain. (*Id.* at ¶ 13). During this conversation, Ms. Keane: (i) represented that Plaintiff had agreed to accept $25,000 in full and final resolution of her claims; (ii) never reserved Plaintiff's right not to be bound to the parties' agreement in the event she did not execute the Agreement; (iii) never advised Mr. Saltarelli or Ms. Stone that Plaintiff wished to review, consider or approve the changes that she and Ms. Stone negotiated; and (iv) behaved as if Plaintiff had given full her authority to agree to the terms she was discussing, including requesting modifications to the non-disparagement and neutral reference provisions on Plaintiff's behalf. (*Id.* at ¶ 14). Tellingly, the only material settlement term that the parties did *not* further discuss or negotiate were the financial terms of the settlement, which had already been predetermined when Plaintiff accepted the Corporate Defendants' offer. All attendees expressed relief that they were able to reach resolution after a long and challenging day. (*Id.* at ¶ 15).

At 5:45 PM, Mr. Saltarelli circulated a revised draft of the Agreement, which neither removed the excerpted language above nor included a reservation of any party's right not to be bound to the parties' settlement absent a signed writing. (*Id.* at ¶ 16, Ex. B). The undersigned reviewed the Agreement, concluded that it captured what the parties had already orally agreed to and negotiated, and forwarded it to Hochwald, who executed it via DocuSign. (*Id.* at ¶ 17). The undersigned sent the executed copy to Ms. Keane and Mr. Saltarelli at 6:48 PM. (*Id.* at ¶ 18, Ex. C). Ms. Keane did not respond. (*Id.* at ¶ 19).

During the evening of June 23, 2026, the undersigned prepared a preliminary draft of the parties' formal settlement agreement. (*Id.* at. ¶ 20). On June 24, 2026, at 10:39 PM, Ms. Keane emailed the undersigned, stating:

> My apologies for the late response. Ms. Egbufor had reconsidered the terms we discussed yesterday and will not sign the agreement as it stands. She will settle for $50,000 payable in five $10,000 installments, with the other terms being acceptable.

(*Id.* Ex. D). Stated differently, Plaintiff reneged solely on her acceptance of the financial terms of the parties' oral settlement agreement – the first and most important term that the parties agreed upon.

### B. <u>This Court Enforces The Parties' Settlement</u>

On July 2, 2026, Defendants moved to enforce the parties' settlement agreement. (ECF No. 44). Plaintiff opposed later that day. (ECF No. 50). Plaintiff's arguments against enforcement were limited to her claims that: (i) the undersigned had not filed a notice of appearance prior to mediation, despite being aware for weeks that the undersigned would appear at mediation; (ii)

she objected to Defendants' statement that she did not object to filing certain portions of that motion under seal; and (iii) "[e]veryone was busy talking at [her] and not necessarily for [her], during [the] [m]ediation . . . [and she] stepped away after reading the unsigned and unconsummated proposal, [and] decided what was proposed was not justice." (ECF No. 50). On October 6, 2026, this Court granted Defendants' motion to enforce the settlement in full, noting:

> Here, *Ms. Egbufor does not contest that she agreed to a settlement involving a $25,000 payment*. . . As a result, the oral agreement is binding. Ms. Egbufor reports dissatisfaction over the mediation process, including feeling "left in the dark over some highly important issues" because "[e]veryone was busy talking at [her]." Dkt. 50 at 2. *But she does not suggest that she did not understand or agree to the terms of the settlement agreement that were reached. Nor did she raise her concerns during the mediation, in which she was represented by Ms. Keane and Ms. Oedraogo.* Her decision "after reading and reviewing the" Agreement that "what was proposed was not justice" cannot unwind the binding contract created by the oral settlement agreement.

(ECF No. 59) (emphasis added).

### C. **Plaintiff Again Attempts To Avoid The Settlement She Agreed To By Filing A Baseless Motion For Reconsideration**

On October 7, 2026, Plaintiff filed the instant Motion. (ECF No. 60). The Motion is perhaps most notable for what it does not dispute. Plaintiff does not contest that she understood and agreed to the financial terms of the settlement during mediation, does not contest that she instructed anyone to reject those terms, and never claims that she told her assigned counsel that she considered those terms to be a mere proposal. Instead, Plaintiff proffers a series of assumptions the settlement she accepted that she apparently never bothered to confirm or clarify with counsel or the mediator. By way of example only, Plaintiff claims that:

- At some unspecified point in the mediation, Ms. Oedraego shared anecdotes about other mediations she had attended, where the parties agreed to revise the financial terms of other settlements. Plaintiff assumed that these then "glean[ed]," without confirming, that "the terms before me that day, were for me review, with the option of my revision, renegotiation and/or refusal" (*Id.* at p. 2 ¶¶ 6-8);

- Relying on those same anecdotes, Plaintiff formed "the belief that I would . . . be able to make changes to any part of the Agreement at a later time," again without confirming this assumption with anyone (*Id.* at p. 3 ¶¶ 1-3);

- After negotiating its terms with the undersigned, Ms. Keane read the Agreement aloud to Plaintiff to confirm them. (*Id.* at p. 2, ¶ 3, 11). This experience was apparently "surprising" and "triggering" to Plaintiff, causing "anxiety and anguish" to "block[] her ears." (*Id.* at p. 2 at ¶¶ 11, 14-15). Rather than sharing this with Ms. Keane Plaintiff simply "[thought] to [her]self, on repeat, 'I can't wait until she stops reading to me. I really need quiet time to review the Agreement independently and with my family.'" (*Id.* at ¶ 15). Plaintiff never shared these thoughts with Ms. Keane, but instead logged off while under "the impression" – never confirmed with anyone – that she "would have had the time to *actually* review and revise the Agreement both independently and collectively with all parties" (*Id.* at p. 3 ¶ 8); and

- Shortly after the mediation, Plaintiff emailed Ms. Keane to "explain her reservations" and subsequently request an "adjustment" to the agreed-upon settlement amount, which she assumed "comes with the process of settlement negotiations." (*Id.* at p. 3 ¶ 10).

In sum, Plaintiff's Motion (coupled with the facts outlined above) sets forth a fairly clear chronology of events. First, Plaintiff accepted the financial terms of the parties' settlement and communicated that fact to Ms. Keane. Ms. Keane then communicated that fact to Defendants and Mr. Saltarelli, and subsequently engaged in additional negotiation of settlement terms on Plaintiff's behalf with the mediator's assistance.[1] Ms. Keane then read the Agreement aloud to Plaintiff and sent it to her, gave Plaintiff various methods to sign it, and logged off for the day. (*Id.* at p. 3 ¶ 5; ECF No. 47 at ¶ 24). Plaintiff never told Ms. Keane that she did not understand the Agreement, did not accept its terms, did not wish to sign, or required further time to consider. Instead, she logged off and simply assumed – without actually confirming with anyone – that the financial terms she accepted could be re-negotiated at her convenience. (ECF No. 60 at p. 3 ¶ 2).[2] Plaintiff later reviewed the Agreement and requested only one change: a self-described "adjustment" doubling the settlement amount she agreed to, which she again assumed "comes with the process of settlement negotiations." (*Id.* at p. 3 ¶ 10; ECF No. 47 Ex. D).

## II. <u>APPLICABLE LAW</u>

Motions for reconsideration are governed by Local Rule 6.3, "and are committed to the sound discretion of the district court." *E. Coast Resources, LLC v. Town of Hempstead*, 707 F. Supp. 2d 401, 413 (E.D.N.Y. 2010). Reconsideration "is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources" and, as such, Local Rule 6.3 is "narrowly construed and strictly applied." *Id.* (collecting cases).

"To prevail on a motion for [reconsideration], the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92 Civ. 302, 1997 WL 538912, at *2 (S.D.N.Y. Aug. 27, 1997) (citations omitted). "[A] party is not permitted to advance new facts, issues or arguments not previously presented on a motion for reconsideration." *E. Coast Resources*, 707 F. Supp. 2d at 413. "Indeed, a party requesting reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use Rule [6.3] to advance new facts and theories in response to the court's rulings." *Church of*

---

[1] Ms. Keane is the highly-respected Director of the Federal Pro Se Legal Assistance Project for this District. There is no reason to believe that she would lie to Defendants or the mediator about Plaintiff's acceptance of the financial terms of the parties' settlement, and Ms. Keane had apparent authority to communicate that acceptance on Plaintiff's behalf. *Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 246 (S.D.N.Y. 2015).

[2] Plaintiff also describes dissatisfaction with her representation, complaining that Ms. Keane was "full of disparagement" and baldly speculating that her original court-appointed attorney's removal was "deliberate and inappropriate." (*Id.* p. 3-4 ¶¶ 9, 15). Plaintiff never contends, however, that Ms. Keane and Ms. Oedraogo failed to disclosure the settlement's terms, and does not dispute that she communicated her acceptance of those terms during mediation. In any event, Plaintiff's eleventh-hour issues with her representation were never made known to Defendants, never presented to this Court in opposition to Defendants' motion to enforce the settlement, and do not change Plaintiff's concession that she agreed to fully and finally settle her claims against Defendants for $25,000 before later seeking an "adjustment."

*Scientology*, 1997 WL 538912, at *2; *Jiminez v. N.Y.C.*, 166 F. Supp. 3d 426, 429 (S.D.N.Y. 2016) ("A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal.").

## III. THE MOTION SHOULD BE DENIED, AND PLAINTIFF SHOULD BE BOUND TO THE SETTLEMENT SHE ACCEPTED

Plaintiff's Motion should be denied for at least two salient reasons. First, it does not meet the stringent standard for a motion for reconsideration under Local Rule 6.3. Second, Plaintiff's Motion fails to establish that she did not agree to the financial terms of the settlement at mediation or alter Your Honor's conclusion that the settlement should be enforced.

### A. Reconsideration Is Not Warranted

The Motion should be denied because it does not satisfy Local Rule 6.3's requirements. Under Local Rule 6.3, a party seeking reconsideration must set forth "the matters or controlling decisions which the moving party believes the court overlooked," which Plaintiff's Motion fails to do. L.R. 6.3. Instead, Plaintiff offers a litany of new excuses that were never presented in opposition to Defendants' motion to enforce the settlement, including the mistaken impressions she formed without any communication and alleged concerns with her representation. Notably, Plaintiff concedes that she has never previously raised the excuses in the Motion with this Court, but advances these arguments based on yet another assumption – she "just thought" she could raise them for the first time during an "Oral Argument Hearing as requested by the Defendants." (*Id.* at p. 1). While Plaintiff is proceeding *pro se*, this does not obviate her obligations to ensure that she understood the mediation process, communicate clearly with her assigned counsel or request new representation, and understand and abide by the applicable rules. The Motion is thus little more than Plaintiff's request to treat "the court's initial decision as the opening of a dialogue," which courts in this District routinely reject as a basis for reconsideration. *Church of Scientology*, 1997 WL 538912, at *2; *E. Coast Resources*, 707 F. Supp. 2d at 413; *Jiminez v. N.Y.C.*, 166 F. Supp. 3d 426, 429 (S.D.N.Y. 2016).

The case *Searles v. Pompilio* is directly on point. In *Searles*, the plaintiff Searles, proceeding *pro se*, attempted to "opt out" of a settlement reached on his behalf by his counsel. No. 02 Civ. 6567, 2010 WL 11507400, at *2 (S.D.N.Y. Feb. 9, 2010). The court granted the defendant's motion to enforce the settlement. *Id.* Searles, now proceeding *pro se*, filed a motion for reconsideration, arguing that he believed he could withdraw for the settlement within thirty days and that he "did not participate in settlement discussions." *Id.* at *3. The court denied Searles' motion, ruling that neither argument could be considered because they were not raised in opposition to the motion to enforce, despite being known to Searles. *Id.* The court also separately rejected those arguments on the merits by: (i) holding Searles' personal beliefs about the settlement insufficient to warrant reconsideration; and (ii) noting that, while he may not have been personally present for settlement negotiations, Searles did not allege that he ever instructed his attorney to reject the settlement offer. *Id.* The same principles hold true here; Plaintiff cannot raise new arguments for the first time on reconsideration, and her unfounded assumptions have no bearing on her acceptance of $25,000 to resolve her claims. Likewise, Plaintiff does not allege – nor could she – that she ever instructed Ms. Keane to reject Defendants' offer or describe it as the subject of further thought. As a result, this Court should deny the "extraordinary remedy" of reconsideration and hold Plaintiff to the bargain she accepted. *E. Coast Resources*, 707 F. Supp. 2d at 413; *see also Jericho Grp Ltd. v. Mid-Town Dev. Limited P'ship*, 816 F. App'x 559, 564 (2d Cir. 2020) (noting that "reconsideration motions are a mechanism for extraordinary judicial relief

invoked only if the moving party demonstrates exceptional circumstances," and denying reconsideration motion based on arguments untimely raised).

### B. <u>The Parties' Settlement Is Binding And Should Be Enforced</u>

Even if Plaintiff had raised the arguments in the Motion at the appropriate time, they do not alter the conclusion that the parties' settlement should be enforced. As set forth above, Plaintiff does not dispute that she agreed to settle her claims for $25,000 at mediation, nor does she allege that she instructed her counsel to reject that offer or frame it as the subject of further debate. *Searles*, 2010 WL 11507400, at *3. Instead, Plaintiff internally assumed that she could change any settlement term at will and left the mediation without telling anyone about her "impression" or reserving the right not to be bound absent a signed writing. This self-serving belief is little more than a "change of heart between the time [the plaintiff] agreed to the settlement and the time those terms are reduced to writing," which is insufficient to avoid enforcement. *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007); *Gregory v. Hanson*, No. 06 Civ. 1726, 2007 WL 9813141, at *1 (S.D.N.Y. Sept. 19, 2007).

Separately, Plaintiff's belated quibbles with the quality of her representation do not alter Ms. Keane and Ms. Oedraogo's apparent authority to settle this case on her behalf at mediation. "Where an attorney has 'apparent authority' to settle a case, and 'opposing counsel has no reason to doubt that authority, the settlement will be upheld' regardless of later protestations by the party to the contrary." *Febus*, 90 F. Supp. 3d at 246 (quoting *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)). "Moreover, because courts presume that an attorney-of record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so . . . any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority." *Febus*, 90 F. Supp. 3d at 246.

Plaintiff provides no such evidence. She does not dispute that Ms. Keane and Ms. Oedraogo were her counsel of record during mediation and authorized to speak on her behalf. She never denies at least initially accepting the Defendants' $25,000 offer (notwithstanding her undisclosed belief that she could change it at any time), and does not describe Ms. Keane's representation at mediation that Plaintiff had accepted that offer as false. She admits that Ms. Keane read her the terms of the Agreement and gave her instructions on how to sign it. She does not claim that she told Ms. Keane she was not prepared to sign, wanted more time to consider, or reserved the right to be bound absent a signed writing other than in her own head. Instead, and at most, Plaintiff vaguely claims that Ms. Keane "pressured" her to accept the settlement and had "no affection for [her] infirmities." (ECF No. 60 at p. 5 ¶ 16). Yet, an attorney and/or mediator urging a plaintiff to agree to a settlement, even inartfully, constitutes neither duress nor a basis to overturn a settlement. *See Murphy v. Inst. of Int'l Educ.*, 32 F. 4th 146, 153 (2d Cir. 2022) (enforcing settlement over plaintiff's objection that attorney and mediator pressured her to accept it and told her that "if she continued, she would be stuck in a room filled with white men who would question every aspect of her life for hours."). Plaintiff offers no basis to conclude that her free will was overcome, that she was prevented from leaving mediation, or that this alleged "pressure" was ever known to Defendants. *Id.* ("[A] party seeking to void an agreement based on duress must show that the alleged coercive behavior originated with the defendant or was known to the defendant at the time the agreement was made."). As such, Plaintiff cannot offer any evidence that Ms. Keane lacked authority to accept the settlement on her behalf during mediation, let alone "affirmative evidence."

For the reasons set forth in Defendant's motion to enforce the parties' settlement and herein, the Motion should be denied and Plaintiff should be held to her bargain. We thank Your Honor for your time and attention to this matter.

Respectfully submitted,

Lindsay Colvin Stone
Jonathan Stoler
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

**WORD COUNT CERTIFICATION**

I, Lindsay Colvin Stone, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,473 words in the document.

*/s/ Lindsay Colvin Stone*
Lindsay Colvin Stone